UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAAD KHADHER,

        Plaintiff,

                                Case No. 12-14765
                                HON. GERSHWIN A. DRAIN

vs.

PNC, NAT'L ASSOC., *et. al.*,

        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#23]

**I.**    **INTRODUCTION**

On September 27, 2012, Plaintiff, Saad Khadher ("Khadher"), brought the instant action in the Oakland County Circuit Court seeking to quiet title to real property located at 2624 Rhodes Drive, Troy, Michigan ("the Property"). On October 26, 2012, Defendants, PNC National Association ("PNC") and the Federal Mortgage Association ("Freddie Mac"), removed the case to this Court. *See* Dkt. No. 1. Presently before the Court is Defendants' Motion for Summary Judgment [#23], filed on September 26, 2013. This matter is fully briefed. A Response was filed on October 17, 2013, and Defendants filed a Reply on October 31, 2013. Upon review the Court concludes oral argument is unnecessary and the Court will resolve the instant motion on the briefs submission. *See* E.D. Mich. L.R. 7.l1(f)(2). Based on the facts below, Defendant's Motion for Summary Judgment is GRANTED.

**II.**    **FACTUAL BACKGROUND**

1

On July 2, 2004, in order to secure financing for the purchase of the Property, Khadher applied for a $155,200 loan from National City Mortgage Services Co. ("National City"), secured by an adjustable rate mortgage on the Property. Khadher specifically applied for a 30-year mortgage, with the first three years having a calculated interest rate of 4.875%. At his deposition, Khadher testified that at the time he submitted his loan application, he understood that the interest rate might fluctuate up or down after 3 years. Additionally, Khadher received and signed (1) a Truth in Lending Disclosure Statement that stated he was applying for an Adjustable-Rate Mortgage ("ARM") with a 3-year 4.875% interest rate, and (2) a Good Faith Estimate of Closing Costs, in accordance with 12 U.S.C. § 2604(c).

On July 23, 2004, Khadher's loan application was approved and a closing was held. Khadher completed and signed a loan application and an Adjustable Rate Note ("the Note"). Pursuant to the Note, Khadher agreed that his interest rate was subject to change in August 2007. Before signing the documents, Khadher discussed the terms of the ARM with a National City representative and testified that he understood the functioning of an adjustable interest rate. The mortgage was recorded by the Oakland County Register of Deeds on August 26, 2004.

Khadher also received and signed a Real Estate Settlement Procedures Act ("RESPA") Servicing Disclosure and a Adjustable Rate Mortgage Loan Program Disclosure. This Disclosure provided that Khadher's interest rate could change yearly after the third loan year and that his monthly payment could consequently increase or decrease substantially based on annual changes to the interest rate.

Khadher's initial monthly mortgage payment was $821.34. Khadher made payments

2

for three years without any problems. On June 19, 2007, Khadher received written notice that his interest rate would increase from 4.875% to 6.875%, effective September 1, 2007. In September 2007, Khadher's monthly mortgage payment consequently increased to $1,004.07. Khadher made all of his payments at the adjusted rate for one year. On June 19, 2008, Khadher received written notice that his interest rate would decrease from 6.875% to 5.875%, effective September 1, 2008. In September 2008, Khadher's monthly mortgage payment subsequently decreased to $912.50. Khadher made all of his payments at the adjusted rate for one year. On September 1, 2009, Khadher's interest rate dropped again, to 4.000%, and his monthly mortgage payment was decreased to $755.60. On June 21, 2010, Khadher received written notice that his interest rate would drop to 3.500%, effective September 1, 2010. In September 2010, Khadher's monthly mortgage rate dropped to $717.90. Khadher made his monthly payment for October 2010, and then made his payment for November 2010 one month late. Khadher did not make any mortgage payments from December 2010 to February 2011, and therefore defaulted on his loan under the terms of the Note and his mortgage agreement.

PNC attempted to contact Khadher numerous times from January 2011 until March 2011. During that time, Khadher applied for a loan modification, but failed to send PNC the documentation necessary to process his application. On March 17, 2013 and March 18, 2013, PNC sent Khadher letters informing him that his loan had been referred to PNC's foreclosure agencies. Consistent with the terms of the mortgage, PNC accelerated Khadher's debt on March 24, 2011 and sent Khadher written notice of the acceleration. Although Khadher was out of the country from March 25, 2011 until May 1, 2011, working for DynCorps in Afghanistan, he was in communication with his wife, who kept him

3

informed of the status of the impending foreclosure.

After Khadher failed to contact PNC to request an in-person meeting to discuss foreclosure options, PNC posted notice of the impending foreclosure sale. The advertisement ran for four consecutive weeks in the Oakland County Legal News. PNC then foreclosed its mortgage interest on April 3, 2012, by way of a sheriff's sale. Defendant Freddie Mac purchased the Property at the sheriff's sale, and recorded the deed on April 10, 2012. Therefore, Khadher's redemption period expired on October 3, 2012.

Following PNC's acceleration of his indebtedness, Khadher sent PNC numerous insufficient payments trying to reinstate the loan. While PNC returned each of Khadher's insufficient payments to him, Khadher either failed to negotiate the funds returned to him by PNC or claim his interest in the funds. Therefore, PNC forwarded the funds to the State of Michigan, pursuant to Michigan's Uniform Unclaimed Property Act, MICH. COMP. LAWS § 567.22 *et seq.*

## III.    LEGAL ANALYSIS

### A.    Standard of Review

Federal Rule of Civil Procedure 56(a) permits a party to:

> [M]ove for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought. The court shall grant summary judgment  if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has affirmed the use of summary judgment and recognized it as an integral part of the fair and efficient administration of justice. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party seeking summary judgment "bears the initial burden of specifying the

4

basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). The evidence presented must be such on which a jury could reasonably find for the defendant; mere denials, unsupported allegations, or speculations will not be enough to meet this burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**B.    Defendants' Motion for Summary Judgment**

PNC argues that Khadher's Complaint is a hodgepodge of nonsensical allegations and unsupported claims tossed together in an attempt to push back their eventual eviction following the foreclosure of PNC's Mortgage interest in the Property. PNC's Motion and Reply Brief argue that Khadher cannot point to any evidence that supports his claims.

1.    Claims of Fraud (Count I), Breach of Contract (Count III), and Quiet Title (Count VIII).

The aforementioned claims are based on Khadher's allegations that PNC and/or its predecessor made certain misrepresentations to him. To establish a claim for fraud, a plaintiff must show that the defendant made a material misrepresentation with the intention that plaintiff would rely on it, and the plaintiff did rely on the misrepresentation to his detriment. *City of Novi v. Robert Adell Children's Funded Trust*, 473 Mich. 242, 254 (2005). PNC argues there was no such misrepresentation in the instant case. While Khadher

alleges that the mortgage interest rate was fixed at 5.000%, he gave a deposition in which he testified that he signed numerous documents that expressly disclosed the adjustable interest rate, and that he understood how an ARM worked and that his interest rate could increase or decrease after three years. Additionally, the May 23, 2011 letter sent from PNC to Khadher specifically stated the amount required for Khadher to reinstate his loan by May 23, 2011, and noted that if Khadher wished to be reinstated after that date, he needed to call the listed number for an updated reinstatement amount.  While Khadher claims that he spoke to, and relied on, a PNC representative who gave him permission to pay a reduced amount, he has no evidence of record supporting such a contention. Furthermore, PNC's internal system notes reflect that the PNC representative who spoke to Khadher on June 24, 2011 informed him that PNC would not accept partial payment.

A breach of contract claim requires proof of the breach of a valid contractual term and resulting damage. *Miller-Davis Co. v. Ahrens Const., Inc. (On Remand)*, 296 Mich. App.  56, 71 (2012). PNC maintains that Khadher can point to no evidence to support a breach of contract claim nor can he specify any contractual term that was specifically breached.

Additionally, PNC argues that Khadher's fraud and breach of contract claims fail as a matter of law because they are barred by a six year statute of limitations period, and any alleged misrepresentation regarding the terms occurred when the loan was closed in 2004, more than eight years before Khadher filed his complaint. *See* MICH. COMP. LAWS §§ 600.5807(8) and 600.5813. In *Boyle v. GMC*, 468 Mich. 226 (2003), the court held that under MICH. COMP. LAWS § 600.5827,  "a claim accrues when the wrong is done, unless

6

§§ 5829 to 5838[1] apply. [Khadher] does not claim that any of those sections apply." *Id.* at 231. Khadher also recognizes the six year statute of limitations under MICH. COMP. LAWS 600.5831, however, he incorrectly interprets the date the statute began to run as the date of foreclosure, April 3, 2012.

Additionally, in an action to quiet title. "the plaintiff has the burden of proof and must make out a prima facie case of title. Once the plaintiff makes out a prima facie case, the defendants then have the burden of proving superior right or title in themselves." *Beulah Hoagland Appleton Qualified Personal Residence Trust v. Emmet Co. Road Comm.*, 236 Mich. App. 546, 550 (1990). In order to state a claim for quiet title, Khadher must allege: "(a) the interest [he]...claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of [his]...claim." M.C.R. 3.411(B)(2).

Khadher fails to allege, as well as fails to present any evidence establishing he has a superior claim of ownership in the Property. For instance, Khadher does not assert that he tendered the full loan amount to Defendants. Even if being a party to a contract for the sale of land created an equitable interest in the title, Khadher's failure to allege full performance with particularity precludes this Court from plausibly inferring that he has an equitable interest in the title to the Property. Nor does the Complaint allege that title was transferred to Khadher at any point in time.

Based on the above considerations, Defendants are entitled to judgment in their

---

[1] "Those sections govern the accrual of claims regarding entry on or recovery of land, mutual and open account current, breach of warranty or fitness, common carriers to recover charges or overcharges, life-insurance contracts where the claim is based on the seven-year presumption of death, installment contracts, alimony payments, and malpractice." *Boyle*, 468 Mich. at n. 6.

favor on Counts I, III, and VIII.

2.      TILA Claims (Counts IV and VI)

Khadher improperly asserts that PNC violated the Truth in Lending Act ("TILA") as required by 15 U.S.C. § 1641. TILA provides a one year statute of limitations for claims seeking damages:

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence or violation[.]

15 U.S.C. § 1640(e).  A creditor that fails to comply with TILA's requirements for high-cost mortgage loans may be held liable to the consumer for all finance charges and fees paid by the customer.

Equitable tolling of the statute of limitations is available where the plaintiff is unable to discover the alleged violation due to a defendant's fraudulent concealment.  In order for equitable tolling to apply to Khadher's TILA claim, he  must demonstrate "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Hamilton County Bd. of Comm'rs v. NFL*, 491 F.3d 310, 315 (6th Cir. 2007). Caselaw has interpreted "occurrence of the violation" as "the date the plaintiff enters the loan agreement, or in the alternative, when the defendant performs by transmitting the loan funds to the plaintiff." *Harvey v. Ameriquest Mortg. Co.*, No. 10-12246, 2010 WL 4386976, *3 (E.D. Mich. Oct. 29, 2010). The loan at issue was closed on July 23, 2004. Therefore, under a *Harvey* analysis, any violation of TILA occurred on July 23, 2004. Consequently, the statute of limitations for general claims

8

arising under TILA expired on July 23, 2005, and any claims under 15 U.S.C. § 1639 expired on July 23, 2007. Khadher did not file his Complaint until September 27, 2012, therefore, both claims are barred under 15 U.S.C. § 1640(e).

While Khadher claims the statute of limitations is subject to tolling "because the loan intentionally violates state and federal laws," PNC counters that courts have held such an assertion to be a meritless argument. *Koczara v. IndyMack Bank*, *FSB*, No. 10-14065, 2011 WL 379422, *2 (E.D. Mich. Feb. 3, 2011). In *Koczara*, the Court explicitly held that an argument of intentional violation was not enough when the plaintiff "failed to plead or indicate how [d]efendants took affirmative steps to conceal the alleged violations or how [p]laintiff exercised due diligence to discover his cause of action." *Id.* Even if the claims were not time barred, PNC maintains that Khadher's vague allegations would fail in light of the undisputed evidence demonstrating that PNC made all required disclosures and otherwise complied with TILA. At his deposition, Khadher gave testimony that directly refutes the TILA violation allegations made in his Complaint. For example, Khadher admitted that he signed the TILA disclosure document and numerous other documents disclosing all material aspects of the loan. Accordingly, Khadher has failed to bring any evidence demonstrating a question of fact exists as to his TILA claims and Defendants are entitled to judgmnet in their favor on Counts IV and VI.

3.   RESPA Claim (Count IV)

PNC argues that it did not violate the Real Estate Settlement Procedures Act ("RESPA"). RESPA places guidelines on closing costs and settlement procedures and requires that consumers receive various disclosures throughout their mortgage settlement. In his Complaint, Khadher does not cite any specific section of the Act that PNC allegedly

9

violated. Instead, he points to numerous regulatory provisions which fail as a matter of law. First, 24 C.F.R. § 2500.6(a), which directs a lender to provide a special information booklet, does not apply to closed-end loans - loans that do not contemplate repeated credit transaction and include mortgage loans like the one at issue in the instant case. *See* 12 C.F.R. § 226.20(10), (20). Second, this Court and other district courts in the Sixth Circuit have held that no private cause of action exists for violations of 24 C.F.R. § 2500.6(a). *See* 12 U.S.C. § 2604, *Koczara*, WL 379422 at *3. Finally, even if Khadher had a private right of action pursuant to these claims, they would be barred by RESPA's statute of limitations, which requires that any claim be brought within 3 years of the date of the occurrence of the violation. 12 U.S.C. § 2614. Like TILA, any occurrence of the violation is considered to have occurred at the time of closing. Additionally, Khadher cannot point to any evidence supporting his claim that PNC violated 24 C.F.R. § 3500.7, which requires that a lender give a loan applicant a good faith estimate of closing costs within 3 days of his loan application. In the instant case, Khadher received and signed a good faith estimate on July 2, 2004. Defendants are likewise entitled to judgment in their favor on Count IV.

    4. Malpractice Claim (Count V)

   PNC argues that Khadher's malpractice claim fails because Michigan courts have uniformly held that lenders owe borrowers no duty of care. "A malpractice claim requires proof of simple negligence based on a breach of a professional standard of care." *Phillips v. Mazda Motor Mfg., Inc.*, 204 Mich. App. 401, 409 (Mich. Ct. App. 1994). A professional standard of care arises out of the exercise of professional judgment or a professional relationship. *Stover v. Garfield*, 247 Mich. App. 456, 463-64 (Mich. Ct. App. 2001). PNC indicates that it has conducted extensive research on the matter and has not found any

10

decisions that recognize that a lender or a loan service owes a professional duty to a borrower, or any decisions that have found a lender or loan servicer liable for malpractice. Moreover, Michigan law is uniformly clear on the point that lenders owe no duty outside of their contractual obligations to borrowers under state law. *Nat'l City Bank v. Syatt Realty Group, Inc.*, No. 07-cv-12438, 2011 WL 8144, *7 (E.D. Mich. Jan. 3, 2011). Khadher did not attempt to defend his malpractice claim in his Response. Defendants are entitled to judgment in their favor on this claim as well.

### 5. Predatory Lending Claim (Count VII)

It is well established that predatory lending is not a viable claim under Michigan law. *Hiasha v. Countrywide Bank, FSB*, No. 11-11276, 2011 WL 2271319, *5-6 (E.D. Mich. June 8, 2011). Any time such a claim has arisen in Michigan courts, it was summarily dismissed as a matter of law. Khadher has not provided any case law or statutory authority to the contrary, nor did he respond to Defendants' arguments in his Response Brief. Khadher's Predatory Lending Claim is dismissed.

### 6. Claim of Violation of M.C.L § 600.3204 (Count IX)

MICH. COMP. LAWS § 600.3204 governs foreclosure by advertisement. Upon a mortgagor's default, Michigan's Revised Judicature Act requires a foreclosing mortgagee to provide certain notices and to comply with certain statutory obligations. Specifically, under MICH. COMP. LAWS § 600.3205a, the mortgagee must provide notice of the reason for the mortgagor's default, contact information for the mortgagee, and other information related to the mortgagor's rights. If, after notice, the mortgagee does not contact the mortgagor seeking a meeting to discuss relief options, the mortgagee may proceed with the foreclosure. Additionally, the mortgagee must post notice of the pending sale on the

11

premises of the property and issue a public notice for four consecutive weeks in a paper published in the county where the property is located.

Khadher alleges that PNC did not comply with issuing some of the required notices, however, Khadher cannot point to any supporting evidence. In fact, Khadher's own deposition indicates to the contrary, as Khadher testified that he did not contact PNC to discuss foreclosure options after receiving notice and noted that PNC had posted notice of the foreclosure on the Property. Furthermore, Khadher produced his own copy of PNC's notice with his document production. There is no question that Khadher was provided with proper notice, as required under MICH. COMP. LAWS § 600.3204.

> 7.    Dower Rights Claim (Count X)

PNC argues that Khadher's dower rights claim fails because such a claim is expressly barred under Michigan law. Under MICH. COMP. LAWS § 558.3:

> [w]hen a person seized of an estate of inheritance in lands, shall have executed a mortgage of such estate before marriage, his widow shall bel entitled to a dower out of the lands mortgaged, as against every person except the morgagee and those claiming under him.

When Khadher was granted the mortgage on July 23, 2004, he was not married, consequently his wife could bring a dower claim for the Property, against anyone "**except the mortgagee and those claiming under him**." *Id.* (emphasis added) "Dower rights are not a valid defense to...foreclosure proceedings as a matter of law." *Rice v. Rice*, No. 253843, 2005 WL 3077145, *2 (Mich. Ct. App. Nov. 17, 2005) (citing *Tuller v. Detroit Trust Co.*, 259 Mich. 670, 676 (1932). In *Rice*, the court held that the trial court properly granted summary disposition in favor of the plaintiffs on the defendant's challenge to the foreclosure of a mortgage granted by the defendant's husband. *Id.* Khadher fails to address

Defendants' arguments with respect to this claim, accordingly Defendants are entitled to judgment in their favor as to Count X.

>    8.    Accord and Satisfaction Claim (Count XII)

PNC maintains that Khadher's claim for accord and satisfaction fails because the claim is not an independent cause of action. Accord and satisfaction is an affirmative defense which the defendant has the burden of establishing. *Obremski v. Dworzanin*, 322 Mich. 285, 290 (1948). "Accord and satisfaction is based on contract principles and is generally contractual in nature. An "accord" is an agreement between parties to give and accept, in settlement of a claim or previous agreement, something other than that which is claimed to be due, and "satisfaction" is the performance or execution of the new agreement." *Nationwide Mut. Ins. Co. v. Quality Builders, Inc.*, 192 Mich. App. 643, 646 (Mich. Ct. App. 1992) (internal citations omitted). There is no Michigan case law that recognizes accord and satisfaction in the manner in which Khadher is attempting to use it, as an independent cause of action.[2] Moreover, accord and satisfaction is a defense to a claim seeking satisfaction of a debt, and the instant case pertains to the opposite scenario.

While Khadher argues that MICH. COMP. LAWS § 440.3311[3] is applicable, section 3311 specifically states that as a prerequisite for an accord and satisfaction defense, the person against whom a claim is asserted must prove that they "in good faith tendered an

---

[2] Khadher alleges that he tendered payments to PNC, who repeatedly attempted to return the payments to Khadher. Khadher argues that he wanted to and did make payments to PNC and PNC created a default when they forwarded Khadher's mortgage payments to the State of Michigan's unclaimed funds account.

[3] Section 440.311 governs accord and satisfaction by use of instrument.

instrument to the claimant as full satisfaction of the claim." *Id.* Numerous documents establish that PNC continuously refused Khadher's attempted reinstatement payments because they were never for the full required payment. Khadher does not have an accord and satisfaction claim.

9.    Injunctive Relief Claim (Count XI)

Finally, PNC argues that Khadher's injunctive relief claim fails because injunctive relief is a type of remedy available to the claimant, not a separate cause of action. *Shaya v. Countrywide Home Loans, Inc.*, No. 10-13878, 2011 WL 1085617, *7 (E.D. Mich. March 22, 2011). Khadher's assertions that relief is mandated where a defendant intentionally violates statutes and engages in fraud is meritless.

## IV.    CONCLUSION

It Is Ordered that Defendant's Motion for Summary Judgment [#23] is hereby GRANTED.

SO ORDERED

/s/ Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  November 27, 2013

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record  on
November 27, 2013, by electronic and/or ordinary mail.

/s/ Tanya Bankston
Deputy Clerk

---